IN THE MATTER OF DISCIPLINARY PROCEEDINGS AGAINST C. SCHMIDT & SONS, INC. AND C. SCHMIDT & SONS, INC. OF NEW JERSEY.

IN THE MATTER OF THE APPLICATION OF WM. H. P. INC. OF NEW JERSEY.

Argued December 12, 1978—Decided March 21, 1979.

346

*Mr. Leonard A. Peduto, Jr.,* Deputy Attorney General, argued the cause for appellant and cross-respondent Division of Alcoholic Beverage Control (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney; *Ms. Erminie L. Conley,* Assistant Attorney General, of counsel).

*Mr. Arnold M. Mellk* argued the cause for respondents and cross-appellants C. Schmidt & Sons, Inc., et al (*Messrs. Greenberg & Mellk,* attorneys).

The opinion of the court was delivered by

SULLIVAN, J. The petition and cross-petition for certification herein were granted primarily to consider whether the licensing provisions of the Alcoholic Beverage Control Act of New Jersey are subject to the Rehabilitated Convicted Offender's Act of New Jersey.

The Alcoholic Beverage Control Act, *N. J. S. A.* 33:1–1 *et seq.,* provides in section 25 that "no license of any class shall be issued to any person * * * who has been convicted of a crime involving moral turpitude." The disqualification extends to any corporation of which such a person is an officer, director or owner directly or indirectly of more than 10% of the corporate stock.

Section 26 of the act additionally bars a person convicted of a crime involving moral turpitude from being employed by, or connected in any business capacity whatsoever with, a

licensee. However, persons so convicted may, with the approval of the Director, and subject to rules and regulations, be employed by a licensee. Also, pursuant to section 31.2, after the lapse of five years from the date of his conviction, a person may apply for an order removing the statutory disqualification to licensure. The Director may so order, in his discretion, upon being satisfied that the applicant has conducted himself in a law-abiding manner during that period and that his association with the alcoholic beverage industry will not be contrary to the public interest.

The Rehabilitated Convicted Offender's Act (RCOA), *N. J. S. A.* 2A:168A–1 to –6, provides in section 2 that:

> [n]otwithstanding the contrary provisions of any law * * * no * * * licensing authority * * * may disqualify or discriminate against an applicant for a license * * * on the grounds that the applicant has been convicted of a crime * * * except * * * if a conviction * * * relates adversely to the * * * business for which the license * * * is sought.

The same section further provides that if the licensing authority determines that a particular conviction does relate adversely, it is required to "explain in writing" how eight enumerated factors "relate to the license * * * sought." The factors listed are, (1) the nature of the occupation or business for which a license is sought, (2) the nature and seriousness of the crime, (3) the circumstances under which it was committed, (4) the date of the crime, (5) the age of the person when the crime was committed, (6) whether the crime was an isolated or repeated incident, (7) social conditions which may have contributed to the crime, and (8) any evidence of rehabilitation.[1] By L. 1974, c. 161, a new section,

---

[1] RCOA, as originally enacted in 1968, merely permitted any licensing board or agency, "[n]otwithstanding the contrary provisions of any law," to grant an application for a license, even though the applicant had been convicted of crime (other than a high misdemeanor) where it appeared to the licensing authority that the applicant had achieved a degree of rehabilitation which

*N. J. S. A.* 2A:168A–6, was added to RCOA providing that "[t]his act shall not be applicable to any law enforcement agency * * *."

The basic facts herein are undisputed. William H. Pflaumer is the sole stockholder and president of C. Schmidt & Sons, Inc. and C. Schmidt & Sons, Inc. of New Jersey, which corporations are the holders of limited licenses issued by the Division of Alcoholic Beverage Control (ABC). In 1972 Pflaumer pleaded guilty in the Federal District Court in Pennsylvania to a charge of transporting improperly labeled beer in violation of 26 *U. S. C. A.* § 5683. In 1974 he pleaded guilty to both counts of another federal indictment, the first charging a conspiracy with tavern owners to maintain false records of beer purchases in violation of 18 *U. S. C. A.* § 371 and the second charging obstruction of justice by attempting to influence a prospective Grand Jury witness contrary to 18 *U. S. C. A.* § 1503.

As a result of these convictions, the ABC, in June 1976, conducted a hearing with regard to Pflaumer's eligibility for licensing in the alcoholic beverage industry. On August 25, 1976 the Director of the ABC issued a declaratory ruling that Pflaumer had been convicted of acts involving moral turpitude and that he and the two Schmidt corporations were disqualified under *N. J. S. A.* 33:1–25 and –26 from engaging in the alcoholic beverage industry in this State. A notice of appeal was filed in the Appellate Division by Pflaumer and the Schmidt corporations.

While the foregoing administrative matter was pending, the ABC, in July 1976, held a hearing on an application for a limited transportation permit made by Wm. H. P. Inc. of

---

indicated that licensure would not be incompatible with the welfare of society or the aims and objectives of the licensing authority. The requirement that the board or agency "explain in writing" etc., was added by amendment in 1974, L. 1974, c. 161. This amendment incorporated verbatim certain changes in the Civil Service Act adopted at the same time dealing with the appointment of persons convicted of crime to civil service positions. L. 1974, c. 160.

New Jersey (Wm. H. P. are the initials of William H. Pflaumer). The ABC opposed the application on the ground that the corporation actually was a "front" for Pflaumer even though it was represented that he was not an officer, director or stockholder of the corporation. At the same time the ABC considered charges filed against C. Schmidt & Sons, Inc. and C. Schmidt & Sons, Inc. of New Jersey to suspend or revoke their existing wholesale licenses on grounds that Pflaumer's ownership and management disqualified these corporations from holding a license.

On March 10, 1977 the Director adopted the separate reports of the ABC hearing officer which recommended (1) the suspension of the Schmidt corporations' wholesale licenses because of Pflaumer's connections with the corporations, and (2) the denial of the application of Wm. H. P. Inc. of New Jersey for a transportation permit on the ground that its officers and stockholders were merely serving as a "front" for Pflaumer. In his conclusions and order suspending the Schmidt corporations' licenses, the Director rejected the contention that the hearing officer failed to make the findings required by *N. J. S. A.* 2A:168A–2, relying on the Attorney General's formal opinion that the provisions of RCOA are not applicable to an ABC determination of whether persons convicted of crime are eligible to be associated with the alcoholic beverage industry. *Attorney General Formal Opinion No. 4, 1975.*

An amended notice of appeal was filed in the Appellate Division by the Schmidt corporations and a separate notice of appeal filed by Wm. H. P. Inc. of New Jersey. On motion by the ABC the two appeals were consolidated by the Appellate Division.

In the Appellate Division appellants argued that the Director's findings that Pflaumer's two convictions involved moral turpitude and that the officers and stockholders of Wm. H. P. Inc. of New Jersey were serving as a "front" for Pflaumer were arbitrary. It was also contended that the Director's orders abridged the constitutional rights

of appellants. However, appellants' basic assertion was that, contrary to the Attorney General's formal opinion, the ABC, in its licensing activities, is subject to the provisions of RCOA, *supra,* and that there had been a failure to comply with the requirements of that act.

The Appellate Division, in an opinion reported at 158 *N. J. Super.* 595 (1978), held that the only meritorious question raised by the appeals was this latter basic assertion. As to it the Appellate Division held that, in view of the stated purpose of the act,[2] and the expansive and all-encompassing nature of the act's provisions, the ABC in its licensing activities is subject to the RCOA and must comply with the requirements of that act.

The Appellate Division also held that section 6 of RCOA, which makes the act non-applicable to any law enforcement agency, did not exempt the ABC from the act's provisions as the clear thrust of the statutory exception goes to law enforcement activities and the persons who perform them, and does not apply to the licensing functions of those agencies.

Accordingly, the Appellate Division reversed those portions of the Director's orders which were based on the ineligibility of William H. Pflaumer and remanded these matters to the ABC for further proceedings on that issue in conformance with the provisions of *N. J. S. A.* 2A:168A–2. This Court granted the ABC's petition and the corporations' cross-

---

[2]Section 1 of RCOA provides:

The Legislature finds and declares that it is in the public interest to assist the rehabilitation of convicted offenders by removing impediments and restrictions upon their ability to obtain employment or to participate in vocational or educational rehabilitation programs based solely upon the existence of a criminal record.

Therefore, the Legislature finds and declares that notwithstanding the contrary provisions of any law or rule or regulation issued pursuant to law, a person shall not be disqualified or discriminated against by any licensing authority because of any conviction for a crime, unless N. J. S. 2A:93–5 is applicable or unless the conviction relates adversely to the occupation, trade, vocation, profession or business for which the license or certificate is sought.

petition for certification. 77 *N. J.* 501 (1978). For reasons hereinafter given, we reverse the part of the Appellate Division judgment which held that the ABC, in its licensing activities, is subject to the RCOA.

■ We are in full agreement with the Appellate Division holding that the classification of Pflaumer's two convictions as involving moral turpitude within the meaning of *N. J. S. A.* 33:1–25 was proper. The crimes constituted fraud, dishonesty and attempting to obstruct justice, all arising out of Pflaumer's activities in the alcoholic beverage industry. That such conduct involved moral turpitude cannot be doubted. See *Jordan v. DeGeorge,* 341 *U. S.* 223, 227, 71 *S. Ct.* 703, 705, 95 *L. Ed.* 886, 890 (1951); *Severeni v. State etc. Div. Alcoh. Bev. Cont.,* 82 *N. J. Super.* 1, 4 (App. Div. 1964).

■ Also, we agree with the Appellate Division determination that there was sufficient credible evidence in the record to support the administrative determination that Pflaumer actually controlled Wm. H. P. Inc. of New Jersey. As heretofore noted, the initials Wm. H. P. stand for William H. Pflaumer. At the hearing on this corporation's application for a transportation permit, it was shown that Messrs. Gillan and Ruggiero, the officers and stockholders of the corporation, were former employees of Pflaumer in corporations owned or controlled by him, and were still associated with Pflaumer in another corporation engaged in the business of transporting alcoholic beverages.

Following the hearing on Wm. H. P. Inc. of New Jersey's application for a limited transportation permit, the hearing officer reported that:

The testimony of Gillan and Ruggiero clearly evinces the interest of Pflaumer in their corporation. The interwoven corporations of C & R Corp. and K. M. A. Leasing Corporation all share common officers and facilities. Pflaumer owns all of K. M. A. Leasing Corp. and one-third of C & R Corporation. These two corporations have assets; the subject corporation has no tangible assets, and merely acts as a conduit for the transportation of alcoholic beverages from

Schmidt to New Jersey in vehicles owned by Pflaumer completely, leased through C & R Corporation, and then, by way of an intricate leasing plan, to the subject corporation.

His finding that Gillan and Ruggiero were merely serving as a front for Pflaumer is amply supported by the record.

Based on the foregoing, it is clear that Pflaumer, by virtue of his conviction of crimes involving moral turpitude, and any corporation of which he is an officer, director or owner directly or indirectly of more than 10% of the corporate stock, are disqualified from holding an ABC license by virtue of the provisions of *N. J. S. A.* 33:1–25, unless the Division of Alcoholic Beverage Control, in its licensing activities, is subject to the provisions of RCOA, *N. J. S. A.* 2A:168A–1 *et seq.* In that event, the ABC would have to determine if Pflaumer's criminal convictions relate adversely to the business for which the license is sought, and, if so, explain in writing how the eight factors specified in *N. J. S. A.* 2A:168A–2 relate to the license sought.

The liquor business, because of its susceptibility to inherent evils, has always been dealt with as a subject apart. *Grand Union v. Sills,* 43 *N. J.* 390, 398 (1964). We noted in *Blanck v. Mayor and Borough Council of Magnolia,* 38 *N. J.* 484 (1962) that from the earliest history of our State the sale of intoxicating liquor has been dealt with by the Legislature in an exceptional way. Because of its *sui generis* nature and significance it is a subject by itself, to which all the analogies of the law, appropriate to other administrative agencies cannot be indiscriminately applied. *Id.* at 490.

The Alcoholic Beverage Control Act vests the Director or other license-issuing authority with extensive regulatory and investigative power over the liquor industry. *N. J. S. A.* 33:1–35. As heretofore noted, the act disqualifies a person convicted of a crime involving moral turpitude (or his privies) from licensure. *N. J. S. A.* 33:1–25. However, the Director, subject to rules and regulations can approve the employment of such a person by a licensee, *N. J. S. A.* 33:1–26,

and after the lapse of five years from the date of conviction may, in his discretion, enter an order removing the statutory disqualification upon being satisfied that certain statutory conditions have been met. *N. J. S. A.* 33:1–31.2.

Because of the unique status of the alcoholic beverage industry, and the Legislature's special treatment of it, we conclude that despite the broad language of RCOA, *supra,* the Legislature did not intend that that act apply to the elaborate licensing provisions and controls spelled out in the Alcoholic Beverage Control Act.

Even if RCOA should be considered as sufficiently broad in its scope as to ordinarily encompass the Division of Alcoholic Beverage Control licensing activities, the new section added to RCOA in 1974 which specifically provides that "[t]his act shall not be applicable to any law enforcement agency," *N. J. S. A.* 2A:168A–6, makes it clear that the legislative intent was to exclude the ABC from the purview of the act. In this regard, we disagree with the Appellate Division that this provision relates only to law enforcement activities and not to the licensing functions of law enforcement agencies.

The Division of Alcoholic Beverage Control is unique among licensing agencies in that it has broad law enforcement powers. The Director, his deputies, inspectors and investigators have the authority to arrest without warrant for violations of the ABC act committed in their presence and have the authority and powers of peace officers to enforce the act. *N. J. S. A.* 33:1–4. Inspectors and investigators have the duty to arrest all persons they have reasonable grounds to believe are committing or have committed a misdemeanor under Title 33. The Director is empowered to inspect and search licensed premises "without search warrant" and subpoena witnesses. *Id.* 33:1–35. Additionally, the director and his deputies, inspectors and investigators are exempt from the provisions of the Concealed Weapons Act, *N. J. S. A.* 2A:151–43(p). In short, the Division of Alcoholic Beverage Control, unlike most other licensing agencies, is vested with

considerable law enforcement powers, and must be considered a law enforcement agency within the meaning of section 6 of RCOA. Consequently, the provisions of that act are not applicable to it.[3]

It is to be noted that Pflaumer's 1972 conviction is more than five years old and his 1974 conviction will be in the same category sometime this year so that he is now, or shortly will be, eligible to make application to the Director pursuant to section 31.2 of the Alcoholic Beverage Control Act for an order removing the statutory disqualification to licensure.

Appellants' final contention is that even if RCOA is not applicable to the licensing provisions of the ABC Act, the order of the Director debarring Pflaumer from licensure deprives him of equal protection and due process and is violative of the bill of attainder clause of the United States Constitution, Art. I, § 10. These contentions lack merit.

At the risk of repetition, it must be emphasized that the State has a legitimate interest in regulating the operation of the liquor industry in the public interest and protecting it from social dangers to which it is inherently susceptible. *Canada Dry Ginger Ale, Inc. v. F. & A. Distrib. Co.*, 28 *N. J.* 444 (1958). State provisions disqualifying convicted felons from certain employments important to the public interest have been held not to violate principles of equal protection. *DeVeau v. Braisted*, 363 *U. S.* 144, 159, 80 *S. Ct.* 1146, 1154, 4 *L. Ed.* 2d 1109, 1120 (1960). Here the statutory disqualification is limited to persons convicted of crime involving moral turpitude, *i. e.*, fraud, corruption or dishonesty. To bar such a class from activity in the highly sensitive liquor industry clearly is in the public interest.

---

[3]Applicants, in urging that the Legislature intended to include ABC licensure within the remedial scope of RCOA, rely on a December 1976 affidavit of RCOA's sponsor, made in connection with this litigation. The Appellate Division declined to consider the non-contemporaneous statement as an appropriate extrinsic aid to construction. We agree that it should not be considered.

While the statute does not require that such convictions be directly related to activities in the liquor industry, in the instant case Pflaumer's convictions unquestionably are in that category.

As for due process, Pflaumer was given a hearing as to whether his convictions were for crimes involving moral turpitude. However, he objects that the hearing did not encompass the pertinent question of present rehabilitation and therefore denied due process. This argument fails to consider the specific provisions in the ABC Act, section 31.2, which permit a person convicted of crime involving moral turpitude to apply to have the statutory disqualification removed where it appears that he has been rehabilitated and his licensure will not be contrary to the public interest. True, the statute mandates a lapse of five years from the date of conviction before such an application can be made, but we see no denial of due process *per se* where the statute fixes a minimum period of absolute disqualification, so long as such period is not shown to be manifestly arbitrary and unreasonable. No such showing has been made. Moreover, as was noted above, more than five years have elapsed since Pflaumer's 1972 conviction, and his 1974 conviction either now is, or shortly will be, in the same category.

Granting that appellants herein, whose licenses have been revoked or suspended, assert interests which are encompassed by the fourteenth amendment's protection of liberty and property, ultimately the question is whether the State has struck a proper balance between the need to protect the public interest and an offender's opportunity to offer evidence of rehabilitation. We find a proper balance to have been struck.

The contention that the disqualification of Pflaumer is a bill of attainder prohibited under Art. I, § 10 of the United States Constitution is also lacking in merit. "The distinguishing feature of a bill of attainder is the substitution of a legislative for a judicial determination of guilt." *DeVeau v. Braisted, supra,* 363 *U. S.* at 160, 80 *S. Ct.*

at 1154, 4 *L. Ed.* 2d at 1120. Other elements are that it is directed at named persons or members of a readily ascertainable group and also constitutes punishment without a judicial trial. *United States v. Brown,* 381 *U. S.* 437, 447–449, 85 *S. Ct.* 1707, 1714–1715, 14 *L. Ed.* 2d 484, 491–492 (1965).

In *DeVeau v. Braisted, supra,* 363 *U. S.* at 160, 80 *S. Ct.* at 1155, 4 *L. Ed.* 2d at 1120, it was noted that a statutory exclusion made on the basis of a criminal offender's prior conviction "embodies no further implications of [the ex-offender's] guilt than are contained in his * * * judicial conviction." Beyond that, the statute here involved is designed, not to impose punishment on a person for a previous conviction, but rather to exercise what was felt to be a much needed system of control of an industry in which the State and the public have a legitimate regulatory interest.

The judgment of the Appellate Division is affirmed except for its determination that the licensing provisions of the ABC Act are subject to the RCOA. That part of its judgment is reversed.

PASHMAN, J., concurring and dissenting. I concur fully in the opinion of the majority except insofar as it holds that the Rehabilitated Convicted Offenders Act (RCOA), *N. J. S. A.* 2A:168A–1 *et seq.,* does not apply to licensing decisions of the Division of Alcoholic Beverage Control (ABC). On that issue, I respectfully dissent for substantially the reasons stated by Judge Pressler writing for the Appellate Division. *In re Disciplinary Proceedings Against C. Schmidt & Sons, Inc.,* 158 *N. J. Super.* 595 (App. Div. 1978). Although the majority's contention that the ABC fits within the statutory exemption for law enforcement agencies is not without considerable appeal, on balance I believe that the remedial nature of RCOA dictates its application absent a clear expression of legislative intent to the contrary.

I would therefore remand this matter to the ABC for further proceedings consistent with the provisions of the RCOA.

*For affirmance in part and reversal in part*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, CLIFFORD, SCHREIBER and HANDLER—6.

*For affirmance in part and remandment*—Justice PASHMAN—1.