

# THE ATTORNEY GENERAL
# OF TEXAS

October 30, 1987

**JIM MATTOX**
**ATTORNEY GENERAL**

Honorable John B. Holmes, Jr.
Harris County District Attorney
201 Fannin, Suite 200
Houston, Texas 77002

Opinion No. JM-820

Re: Whether a conviction for the offense of issuing a bad check will bar a prosecution for theft where both offenses arise out of the same transaction

Dear Mr. Holmes:

You ask whether the double jeopardy provisions of the state and federal constitutions will bar the prosecution of a defendant for theft of property fraudulently obtained by the passing of a worthless check where the defendant has already been prosecuted for the class C offense of issuance of a bad check. Under the scenario you provide both offenses grow out of the same transaction.

The United States Constitution and the Texas Constitution prohibit any person from twice being placed in jeopardy for the same offense. U.S. Const., amend. V; Texas Const. art. 1, §14.

Section 32.41 of the Penal Code makes the <u>issuance of a bad check</u> a class C misdemeanor. It provides in pertinent part:

> (a) A person commits an offense if he issues or passes a check or similar sight order for the payment of money knowing that the issuer does not have sufficient funds in or on deposit with the bank or other drawee for the payment in full of the check or order as well as all other checks or orders outstanding at the time of issuance.

Article 32.41 was amended in 1987 by adding subsection (g) to read as follows:

> An offense under this section is not a lesser included offense of an offense under section 31.03 or 31.04 of this code. (Emphasis added.)

Penal Code §32.41(g); Acts 1987, 70th Leg., ch. 687, at 5091.

Under article 31.03 of the Penal Code the offense of theft is defined, as follows:

> (a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property.
>
> (b) Appropriation of property is unlawful if:
>
> (1) it is without the owner's effective consent;
>
> (2) the property is stolen and the actor appropriates the property knowing it was stolen by another; or
>
> (3) property in the custody of any law enforcement agency was explicitly represented by any law enforcement agent to the actor as being stolen and the actor appropriates the property believing it was stolen by another.

A person commits the offense of theft of service under article 31.04 of the Penal Code when the following elements are present:

> (a) A person commits theft of service if, with intent to avoid payment for service that he knows is provided only for compensation:
>
> (1) he intentionally or knowingly secures performance of the service by deception, threat, or false token;
>
> (2) having control over the disposition of services of another to which he is not entitled, he intentionally or knowingly diverts the other's services to his own

> benefit or to the benefit of another not entitled to them; or
>
> (3) having control of personal property under a written rental agreement, he holds the property beyond the expiration of the rental period without the effective consent of the owner of the property, thereby depriving the owner of the property of its use in further rentals.

The punishment range under articles 31.03 and 31.04 is from a class C misdemeanor to a 2nd degree felony.

The Court of Criminal Appeals, in the recent case of May v. State, 726 S.W.2d 573 (1987), held that a defendant convicted of involuntary manslaughter could not be prosecuted for driving while intoxicated where both offenses arose out of the same automobile accident. After reviewing numerous United States Supreme Court and Court of Criminal Appeals decisions and noting that the double jeopardy prohibition may preclude subsequent prosecution, even though each offense may include elements which the other did not, the court stated:

> Turning to the instant cause, we first note that both offenses are alleged to have been committed June 12, 1983. The indictment for involuntary manslaughter alleged in part that in Dallas County appellant did:
>
> > 'then and there by accident and mistake when operating a motor vehicle while intoxicated, and by reason of such intox- ication, [emphasis in original] cause the death of [a named individual], by then and there driving her automobile across a center median [emphasis in original] and colliding with a vehicle occupied by [named individual], and thereby cause the death of said individual.'
>
> The information for DWI alleged in pertinent part that appellant:
>
> > 'was intoxicated, and under the influence of intoxicating liquor, and while so intoxicated and under the influence of

> intoxicating liquor, [emphasis in original] did then and there unlawfully drive and operate a motor vehicle upon a public street and highway, [emphasis in original] in Dallas County, Texas.'
>
> Facially allegations of the greater offense of involuntary manslaughter required proof of the lesser offense, i.e., that appellant operated her motor vehicle upon a public roadway while intoxicated and collided with another vehicle after driving across a center median. The record clearly shows that the State will rely on and seek to prove the DWI case the same act of driving while intoxicated on public roadway as 'the reckless act necessary to prove [involuntary] manslaughter.' Vitale, supra at 421, 100 S.Ct. at 2267.
>
> Thus the record, including charging instruments, judgment of conviction for involuntary manslaughter and habeas testimony, demonstrates that appellant has been convicted of a crime having several elements included in it and is now facing a trial for a lesser offense consisting solely of one or more of the elements of the crime for which she has already been convicted. In this Court the State practically concedes the point by relying on the fact that the judgment in State v. Padilla, 101 N.M. 58, 678 P.2d 686, 101 N.M. 82, 678 P.2d 710 (1984), was affirmed by an equally divided Supreme Court, Fugate v. New Mexico, 470 U.S. 904, 105 S.Ct. 1858, 84 L.Ed.2d 777 reh. den. 471 U.S. 1112, 105 S.Ct. 2349, 85 L.Ed.2d 865 (1985). (Emphasis added.)

726 S.W.2d at 576-577.

Prior to the present Penal Code, the offense of passing a check without sufficient funds was the only statutory offense involving worthless checks. The prohibited conduct was set forth in article 567b of the Penal Code (1939) (repealed). The current Penal Code (1974) allows prosecution under the theft statutes, section 31.03 (general theft) and section 31.04 (theft of services). In addition, section 32.41 makes the issuance of a bad check

a class C misdemeanor.  The Practice Commentary  following section 32.41 noted, in pertinent part:

> This section expands prior law in the bad check area.  Underlying this provision  is the belief that the issuance or passing of a known bad  check  is, in  itself,  not  only harmful to the recipient but also  injurious to the community at large and is, therefore, a proper subject for criminal sanction with-out regard  to  the purpose  for  which  the check was given.  For  example, even if  the immediate  recipient  gives  up  nothing  in return for the check, and, therefore, is not defrauded in the strict sense of that  term, he  may  further  negotiate  the  check,  or deposit it and draw against it.  This  poss-ibility places him in a precarious  position and creates a threat of harm to the  general public.  Another important  function of  the provision is  the  encouragement  of  prompt payment of dishonored checks.

In reviewing the elements  of _theft_ and _the  issuance of  a  bad  check_ the  Court  of  Criminal  Appeals  in _Christiansen v. State_, 575 S.W.2d 42 (1979), in an  appeal from a theft conviction arising out of the passing of  bad checks in the amount of $241.80 in exchange for four money orders, stated:

> The record  does reflect  that  appellant properly requested  a charge  on the  lesser included offense of issuance of a bad  check under Sec. 32.41, _supra_.  The key  distinc-tion between  the  offense  of  theft  under V.T.C.A.  Penal  Code,  Sec.  31.03,  and  the offense of  issuance of  a bad  check  under V.T.C.A. Penal Code, Sec. 32.41, is  whether the defendant in fact receives any property. Receipt of property and  proof of its  value are critical  elements  in  the  offense  of theft.  They are,  however, not required  to prove issuance of a bad check.

575 S.W.2d at 44.

The court  in _Christiansen_  did,  however,  go  on  to state, "[a]lthough  issuance of  a bad  check, a  class  C misdemeanor, may  under  some  circumstances  be  a  lesser

included offense of theft, there is nothing in the evidence before us to have required the trial court to have submitted the charge on the lesser included offense." Id. at 44-45.

In a more recent opinion, McClain v. State, 687 S.W.2d 350 (1985), the Court of Criminal Appeals overruled previous holdings of the court that participation in the initial acquisition was an essential element of the offense of theft. The court concluded that, under the present Penal Code, there was no distinction in the essential elements of the offenses of theft and receiving and concealing stolen property. The court stated that:

> The error of Casey [633 S.W.2d 885, Tex. Crim. App., 1982] is precipitated by its focus on the 'manner of acquisition' of personal property, a focus the Legislature removed entirely from the theft statute in the 1974 penal code, then further refined in the 1975 legislative session. Just as it has been in the past recognized that the actor's intent to 'benefit himself or another' or to 'withhold the property permanently' are not essential to commission of a theft, so too has it now been acknowledged that the 'manner of acqui-sition' is inconsequential to the evil of a theft: the gravamen of theft is in depriving the true owner of the use, benefit, enjoyment or value of his property, [emphasis in original] without his consent.

> Thus, the varying misleading emphases on aspects of acquisitive conduct proscribed under former penal codes were sifted out by the new, and a single offense was distilled from the common elements contained in each: clearly, if one exercises control over property knowing it is without the owner's consent, and intending to deprive the owner of it, it matters not 'how' the actor got the property, [emphasis added] whether he intended to benefit himself or another, intended 'permanently' to deprive the owner, etc.

. . . .

> Section 31.03(b)(1) and (2) simply do not provide the 'nature of the forbidden conduct;' instead, they are both only '<u>circumstances surrounding</u> [emphasis in original] the conduct,' which in no way constitute 'acts or omissions' of the defendant. It follows that these provisions have evidentiary import only in terms of establishing the 'unlawfulness' of the appropriation, and the defendant is not entitled to have them expressed in the State's charging instrument as a matter of 'form' under <u>Thomas v. State</u>, 621 S.W.2d 158 (Tex. Cr. App. 1981) (Opinion on state's motion for rehearing), much less substance.

687 S.W. 2d at 353-55.

While the Legislature by its amendment to article 32.41 was probably expressing the intent that there be no bar to the imposition of multiple punishments under that statute and the appropriate theft statute, we believe the crucial test in determining whether jeopardy attaches under the state and federal constitutions requires us to look at the elements of the respective offenses. Unlike the defendant in <u>May</u>, a defendant convicted for <u>issuance of a bad check</u> has not been convicted of a crime having any of the elements of the offense of <u>theft</u>. <u>McClain</u> made it clear that it "matters not" how the accused acquired the property in a theft case. On the other hand, the issuance or passing of a known bad check is the gravamen of the offense under section 32.41.

It is our opinion that the courts will hold that the trial of an accused for the offense of issuance of a bad check under section 32.41 of the Penal Code will not serve as a bar under the double jeopardy provisions of the state and federal constitutions to a prosecution for theft (under section 31.03 or 31.04 of the Penal Code) growing out of the same transaction.

## S U M M A R Y

The trial of an accused for the offense of issuance of a bad check under section 32.41 of the Penal Code will not serve as a bar under the double jeopardy provisions of

the state and federal constitutions to a prosecution for theft (under sections 31.03 or 31.04 of the Penal Code) growing out of the same transaction.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Tom G. Davis
Assistant Attorney General